# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
DOMINIQUE ALEXANDER WILLIAMS,    )
                                 )
          Plaintiff,             )
                                 )
     v.                          )    1:23CV66
                                 )
GUILFORD COUNTY JAIL             )
(GREENSBORO), et al.,            )
                                 )
          Defendants.            )
```

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommendation on Defendants' Motion to Dismiss (Docket Entry 17; see also Docket Entry 18 (Memorandum in Support)). For the reasons that follow, the Court should grant in part and deny in part the Motion to Dismiss.

## I. BACKGROUND

According to the Amended Complaint in this case, Plaintiff, at all relevant times a pretrial detainee at Guilford County Detention Center (the "GCDC") (see Docket Entry 15 at 2), "slip[ped] and fell in [his] Pod [] and [was subsequently] taken to [a] hospital for [his] injuries" (id. at 3).[1] After returning to the GCDC,

---

[1] Plaintiff's original complaint contained a due process claim related to conditions at the GCDC (specifically, the wet floor on which Plaintiff slipped and fell (see Docket Entry 2 at 4, 6)), which the Court dismissed upon initial review by the undersigned United States Magistrate Judge (see Docket Entry 4 at 5 (recommending dismissal); Docket Entry 10 at 1-2 (adopting recommendation)).

Plaintiff alleges that he continued to experience back pain and a "[g]rowing area" of numbness in his leg.  (See id. at 3-4.)  The Amended Complaint asserts that Defendant Haq, a doctor and medical provider at the GCDC, displayed deliberate indifference to Plaintiff's medical needs by refusing to refer Plaintiff to a "Nerve Doctor" due solely to the associated cost, and otherwise neglected to treat Plaintiff's symptoms for over 90 days.  (See id. at 4-6.)  The Court (per United States District Judge Catherine C. Eagles) authorized "[t]his case [to] proceed on [P]laintiff's claim against [D]efendant Haq for deliberate indifference to a serious medical need."  (Docket Entry 10 at 2.)

The Amended Complaint reports further that "[w]hen Plaintiff s[ought] to exhaust administrati[ve] remedies as to [his medical] treatment . . . a nurse [] and Classification staff [] would not provide any grievance forms to Plaintiff."  (Docket Entry 15 at 3 (certain capitalization omitted).)  To support that allegation, the Amended Complaint references "a 'workflow'" (id. at 7) report of messages Plaintiff sent on the GCDC kiosk to various departments at the GCDC, including "Classification," "Medical," and "Other" (see Docket Entry 2 at 19-48).

Defendant moved to dismiss the Amended Complaint's surviving claim(s) on two grounds.  (See Docket Entry 17 at 1.)  First, the Memorandum in Support asserts that Plaintiff "failed to exhaust his administrative remedies under the Prison Litigation Reform Act

2

["PLRA"]." (Docket Entry 18 at 1.) In that regard, the Memorandum in Support notes that Plaintiff "filed grievances related to his slip and fall, but not the medical treatment." (Id. at 3; see also id. (disputing Plaintiff's allegation "that he was not provided with grievance forms, [because] he was provided forms related to his other grievances").) Second, the Memorandum in Support argues under Federal Rule of Civil Procedure 12(b)(6) for dismissal of any official-capacity claim against Defendant Haq, because "state officials acting in their official capacities cannot be sued for damages [under Section 1983]." (Id. at 4; see also id. (additionally contending that "the Eleventh Amendment bars suit for monetary damages against the State of North Carolina and its various agencies").) For the reasons that follow, the current record does not support a finding as a matter of law that Plaintiff failed to exhaust administrative remedies. Conversely, any official-capacity claim should not proceed, albeit not for the reasoning set forth by Defendant Haq.

## II. DISCUSSION

### A. Rule 12(b)(6) Standards

"A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the claims pled in a complaint." ACA Fin. Guar. Corp. v. City of Buena Vista, Va., 917 F.3d 206, 211 (4th Cir. 2019). "To sufficiently plead a claim, the Federal Rules of Civil Procedure require that a pleading . . . contain . . . a short and

3

plain statement of the claim showing that the pleader is entitled to relief." Id. (citing Fed. R. Civ. P. 8(a) (internal brackets and quotation marks omitted)). Although "[t]his pleading standard does not require detailed factual allegations," id., a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).[2] The Court thus need not accept as true any "legal conclusions," id., or "bare assertions devoid of further factual enhancement," Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). As a general matter, in ruling on a Rule 12(b)(6) motion, "a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011).

---

2 Although the Supreme Court has reiterated that "[a] document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying Twombly standard in dismissing pro se complaint).

4

## B. Exhaustion of Administrative Remedies

Defendant Haq first moved to dismiss the Amended Complaint on the grounds that Plaintiff "failed to exhaust his administrative remedies under the Prison Litigation Reform Act." (Docket Entry 18 at 1.) The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007). Even so, "the exhaustion requirement hinges on the availability of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." Ross v. Blake, 578 U.S. 632, 642 (2016) (internal brackets and quotation marks omitted). Courts may consider an administrative remedy unavailable where (1) "it operates as a simple dead end," id. at 643, (2) it "[is] so opaque that it becomes, practically speaking, incapable of use," id., or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation," id. at 644. Cases from across circuits "recogniz[e] that an inmate able to file one grievance is not necessarily able to file others, at different times or on different topics." Moss v. Harwood, 19 F.4th 614, 622 (4th Cir. 2021) (collecting cases).

5

To support his argument for dismissal due to non-exhaustion, Defendant Haq notes that Plaintiff "filed grievances related to his slip and fall" (Docket Entry 18 at 3) and "was provided forms related to [those] grievances" (id.), so his failure to complete a grievance form for his allegedly inadequate medical treatment requires dismissal (see id.). But here, the available record evidence does not establish, as a matter of law, that Plaintiff failed to exhaust his administrative remedies for his medical treatment claim.

The (limited) record reflects that Plaintiff, on August 5, 2022, sent a message through the GCDC kiosk providing "notice that [he] want[ed] to file a grievance d[ue] to the fact that [he] fell." (Docket Entry 2 at 32.) Plaintiff routed that request to "Classification JC" (id.), and, on August 15, 2022, a staff member named Sellers informed Plaintiff that "[a] grievance form will be sent to you." (Id. at 33.) Plaintiff thereafter filed a grievance related to his slip and fall. (See Docket Entry 15 at 3.)

Then, on November 28, 2022, Plaintiff requested on the GCDC kiosk "a grievance for [] lack of treatment to [him] please." (Docket Entry 2 at 19.) Plaintiff again routed that request to "Classification JC" (see id.), but a staff member named Johnson then re-routed the request to "Medical JC" (see id.). Next, on December 21, 2022, a staff member named Figueroa responded that "[grievances] are submitted on the kiosk" (id.), and (that same

6

day), due to Plaintiff submitting a separate request (on December 19, 2022, which he routed to "Other JC" (see id. at 29)), once more "asking classification for a grievance for medical" (id.), the staff member Sellers (who sent Plaintiff the grievance form for his slip and fall on August 15), informed Plaintiff that "medical[ ] have their own grievance procedures" (id.), but did not identify or explain those procedures (see id.).

Thereafter, on December 22, 2022 (the day after Plaintiff received messages from Figueroa and Sellers), Plaintiff submitted a new request for a grievance form, which he routed to "Medical JC." (Id. at 26.) Two days later, a staff member named Oldman responded that "Medical **does not provide paper grievance forms**. You have to write classification on the kiosk concerning your grievance." (Id. (emphasis added).) Coincidentally, Plaintiff had routed another request for a grievance form related to his medical treatment to "Classification JC" on December 9, 2022. (See id. at 21.) A staff member responded to this fourth request on December 27, 2022, indicating that Plaintiff had already addressed this issue with the staff member Sellers. (See id.)

To recap, Plaintiff requested a grievance form related to his medical treatment on four occasions: November 28, December 9, December 19, and December 22. (See Docket Entry 2 at 19, 21, 26, 29.) He routed the first two requests to "Classification," the third request to "Other," and the final request to "Medical." (See

7

id.)  In response to his first and final requests, Plaintiff ultimately received messages from Medical staff indicating that he should submit his grievance directly to Classification, because Medical does not provide grievance forms.  (See id. at 19, 26.)  To his second and third request, Plaintiff effectively received the same message: that Medical had its own grievance procedures.  (See id. at 21, 29.)

The foregoing recitation of events does not establish, as a matter of law, the unavailability of administrative remedies to Plaintiff.  On the contrary, the messaging from Medical remained consistent: Plaintiff, to submit a grievance related to medical treatment, should submit a summary of the grievance directly to Classification, because Medical did not provide grievance forms.  (See id. at 19, 26.)  However, that consistent messaging to Plaintiff also does not support the argument that Plaintiff, as a matter of law, failed to exhaust his administrative remedies, for two reasons.

First, Defendant Haq moved to dismiss the Amended Complaint on the grounds that Plaintiff did not submit a grievance **form** related to his medical treatment, even though "he was provided **forms** related to his other grievances."  (Docket Entry 18 at 3 (emphasis added).)  However, medical grievances, at least according to the record before the Court, appear to follow a different process, wherein inmates submit summaries of their grievances directly

8

through the kiosk to Classification, rather than by physical form. (See Docket Entry 2 at 19, 26.) In fact, the GCDC Medical staff stated expressly that they "do[] not provide paper grievance forms" (id. at 26), and Classification staff (Sellers, who previously sent Plaintiff a grievance form for his slip and fall) told Plaintiff that "medical[ ] have their own grievance procedures" (id. at 29).

Second, to the extent Plaintiff should have contacted Classification directly for his medical grievance, Plaintiff did so, on two occasions (November 28 and December 9). (See id. at 19, 21.) On the first of those occasions, a Classification staff member (improperly, apparently) re-routed the request to Medical (see id. at 19), and, on the second, a staff member responded that Plaintiff had already addressed this issue with Sellers (id. at 21), who in turn had merely informed Plaintiff that "medical[ ] have their own grievance procedures" (id. at 29).

As a sister circuit once explained, "[t]he ability to take advantage of administrative grievances is not an either-or proposition. Sometimes grievances are clearly available; sometimes they are not; and sometimes there is a middle ground where, for example, a prisoner may only be able to file grievances on certain topics." Kaba v. Stepp, 458 F.3d 678, 685 (7th Cir. 2006). In this case, Plaintiff successfully filed a grievance related to his slip and fall. His efforts to submit a subsequent grievance related to his medical treatment, albeit ultimately unsuccessful,

9

do not conclusively establish a failure on his part to exhaust administrative remedies. Plaintiff repeatedly requested a grievance form to address his medical treatment. Medical staff told Plaintiff to contact Classification, but, when he did so, Classification staff routed his request to Medical. On another occasion, Classification staff told Plaintiff that Medical had different procedures, without explaining those procedures, or advising him that (as the record appears to suggest) he needed to submit a summary of the substance of his grievance directly to them. In sum, given the limited and muddled record available to the Court at this time, as well as the requirement that the Court must accept as true the Amended Complaint's factual allegations, see Iqbal, 556 U.S. at 678, the Court should decline to dismiss Plaintiff's surviving claim(s) on exhaustion grounds.

### C. Official-Capacity Claim

Alternatively, Defendant Haq moved to dismiss the official-capacity aspect of Plaintiff's surviving claim(s), arguing that Defendant Haq constitutes a state official, and that "state officials acting in their official capacities cannot be sued for damages [under Section 1983]." (Docket Entry 17 at 4.) The Supporting Memorandum provides no support for the proposition that a doctor at a North Carolina county jail qualifies as a state official for Section 1983 purposes (see id.), and the Court has identified none. By law, healthcare providers such as Defendant

10

Haq receive their authority to operate in county confinement facilities as a result of action taken at the county level, not the state level. See N.C. Gen. Stat. § 153A-225. Furthermore, North Carolina sheriffs, who oversee county jails (including the provision of medical care therein), do not constitute state officials. See Harter v. Vernon, 101 F.3d 334, 337 (4th Cir. 1996). Accordingly, because Defendant Haq does not operate in the GCDC as an official of the State of North Carolina, the Court should decline to dismiss Plaintiff's official-capacity claim on the basis presented by Defendant Haq.

Although Defendant Haq's proffered basis for dismissal lacks merit, the Court still retains an independent obligation to review the sufficiency of each claim as to each Defendant. See 28 U.S.C. § 1915A(a)&(b) ("The court shall review . . . [the] complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity . . . [and] shall identify cognizable claims or dismiss the complaint . . . if the complaint . . . fails to state a claim upon which relief may be granted . . . ."). In light of that obligation, the Court should dismiss the official-capacity aspect of Plaintiff's surviving claim(s) against Defendant Haq because the factual allegations do not give rise to an official-capacity liability for inadequate medical treatment.

11

Under Section 1983, liability can arise "in three ways: in [the defendant's] personal capacity, his official capacity, or in a more limited way, his supervisory capacity." King v. Rubenstein, 825 F.3d 206, 223 (4th Cir. 2016). "To state a[n official-capacity] cause of action . . . a [S]ection 1983 plaintiff must plead (1) the existence of an official policy or custom; (2) that the policy or custom is fairly attributable to the [government unit]; and (3) that the policy or custom proximately caused the deprivation of a constitutional right." Pettiford v. City of Greensboro, 556 F. Supp. 2d 512, 530 (M.D.N.C. 2008). "A policy or custom for which a [government unit] may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission . . . that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law." Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (internal brackets and quotation marks omitted). In that regard, a "single, isolated incident is not sufficient to establish a policy or custom of medical neglect." Simmons v. Corizon Health, Inc., 136 F. Supp. 3d 719, 722 (M.D.N.C. 2015); see also Lytle, 326 F.3d at 473 (holding that "isolated incidents of unconstitutional conduct by subordinate

12

employees are not sufficient to establish a custom or practice for § 1983 purposes" (internal quotation marks omitted)).

The Amended Complaint does not contain sufficient factual matter to indicate the existence of an official policy allowing for the denial of necessary medical care solely for reasons of cost, or any policy sanctioning lengthy delays in medical treatment. See Iqbal 556 U.S. at 678. Plaintiff has identified only one instance of allegedly inadequate medical treatment, his own, but a "single, isolated incident is not sufficient to establish a policy or custom of medical neglect," Simmons, 136 F. Supp. 3d at 722; see also Lytle, 326 F.3d at 473. Because the Amended Complaint does not contain facts to support the finding of an official policy, the Amended Complaint consequently fails to establish that any "policy . . . proximately caused the deprivation of a constitutional right," Pettiford, 556 F. Supp. 2d at 530. As a result, the Court should dismiss the Amended Complaint's official-capacity claim against Defendant Haq.

### III. CONCLUSION

The current record does not establish, as a matter of law, that Plaintiff failed to exhaust administrative remedies; however, any surviving official-capacity claim should not proceed.

**IT IS THEREFORE RECOMMENDED** that the Motion to Dismiss (Docket Entry 17) be granted in part and denied in part, in that any surviving official-capacity claim should be dismissed, but Plaintiff's individual capacity claim against Defendant Haq for deliberate indifference to a serious medical need should proceed.

This 13th day of June, 2023.

                                              <u>/s/ L. Patrick Auld</u>
                                                  **L. Patrick Auld**
                                  **United States Magistrate Judge**